### HATTABAUGH v. THOMAS.

No. 33910.   Nov. 21, 1950.

*224 P. 2d 602.*

W. H. Gilliam, of Tulsa, for plaintiff in error.

F. E. Riddle and A. C. Elliott, both of Tulsa, for defendant in error.

ARNOLD, V.C.J.   On December 26, 1947, Jacob D. Carter commenced this action in the district court of Tulsa county to cancel a deed executed by mark by which he purportedly conveyed to his wife, Lena Carter, lot 5, block 38, West Tulsa Addition to the city of Tulsa, Oklahoma.   He alleged in his petition that he was 88 years of age, and that on August 8, 1946, through the fraud, conspiracy, and undue influence of certain persons acting conjointly with his wife, he was induced to execute said deed at a time when he was physically and mentally incompetent to understand and know the effect of his acts.   Thereafter an amended petition was filed upon which the case was tried after the action had been revived in the name of C. F. Thomas as administrator of plaintiff's estate, Jacob D. Carter having died February 26, 1948.   Lena Carter had died October 8, 1947, and prior to her death she had executed a purported will devising the property here involved to her sister, Maud Hattabaugh, who was the principal defendant in the trial court and is plaintiff in error here.

Defendant's answer consisted of a general denial and affirmative allegations of the competency of Jacob D. Carter at the time he executed the deed to his wife and a denial of any fraud, conspiracy, or undue influence used to obtain his signature to said deed.

Upon trial to the court judgment was entered in favor of the plaintiff which was a general finding that plaintiff had established the allegations of his petition and title was quieted in plaintiff.

Plaintiff in error has made four assignments of error, but in her brief she has presented and argued only the following:

"The court erred in rendering, granting, and awarding judgment in favor of defendant in error which was contrary to law and against the clear weight of the evidence."

From the record it appears that Jacob D. Carter at the time of the execution of the deed here involved was 86 years of age; that his first wife died in 1943 and he married his present wife, who was a sister of the first wife, in 1945; that in the interim between the death of his first wife and his marriage to her sister he was married to two other women from whom he was divorced; that he was an automobile mechanic but owing to his advanced age he had given up doing that kind of work and for about a year prior to the events giving rise to this litigation

he was a tenant on the farm of Dr. T. W. Stallings near Jenks in Tulsa county; that he engaged in truck farming there but in the late spring or early summer of 1946 he left the farm and returned to his home in Tulsa; that in June, 1946, he was in Mercy Hospital where he remained until the 17th of July, when he was released; that on July 21st thereafter he was taken to Flower Hospital in Tulsa where he remained until July 31st when he was returned to his home, and thereafter, on the 15th day of August, he was taken to Hillcrest Hospital where he remained until the 13th day of September; that on the 8th day of August after his return from Flower Hospital he executed by mark in the presence of two witnesses an instrument purporting to be a warranty deed conveying his home to his wife Lena Carter.

Upon the trial of the case in district court all the testimony was directed to the question of his mental capacity at the time the deed was purportedly executed, defendant in error asserting his incompetency and plaintiff in error relying on the validity of the deed by testimony which she urges as sufficient to show mental capacity. Numerically the witnesses on both sides are about equal, but we think that the opportunities for observing and evaluating the mental condition of Jacob D. Carter are perhaps shown to have been better by the witnesses testifying to incompetency. The trial court found that plaintiff had sustained the allegations of his petition by the clear weight of the evidence and based his judgment canceling the deed upon this finding.

Dr. T. W. Stallings had known Mr. Carter for about ten years and during that time had been rather closely associated with him in business transactions and periodically as his attending physician. The doctor testified that in the spring of 1946 when Mr. Carter returned to Tulsa he was suffering from virus infection following a severe attack of flu and that his physical and mental condition due to this infection and to his advanced age was extremely poor. He further testified that he attended Mr. Carter as his physician while he was in the two hospitals mentioned and that after his return to his home on July 31st he visited and attended him there, and gave it as his opinion from his long observation and his knowledge of and treatment of the ailment from which Mr. Carter suffered that he was mentally incapable of realizing the nature and effect of his act in executing the purported deed of August 8th. Helen Carter was the wife of Jacob Carter's nephew and had known and had been intimately associated with Mr. Carter for six years; that she went with him when he was taken to Flower Hospital on the 21st of July and visited him every day while he was there; that at no time while he was in that hospital from July 21st to July 31st was he in such mental condition as to recognize her when she visited him or to hold a rational conversation with her; that she visited him after he was returned home on the 31st of July several times prior to the 8th day of August and that his condition continued about the same as when she visited him at the hospital; that from her observation of him in the hospital and at home it was her opinion that he did not realize what he was doing when he executed the purported deed. C. F. Thomas, the administrator of his estate, had known Mr. Carter for forty years and for the last five or six years had lived near him and been more or less intimately associated with him. His testimony in reference to the physical and mental condition of Mr. Carter in July and August, 1946, is of the same tenor and effect as was the testimony of the two witnesses above mentioned.

Witnesses testifying for defendant and asserting the mental capacity of Mr. Carter during this period are the lawyer who prepared the deed and took the acknowledgment thereto, and two witnesses to the execution of the deed, and the defendant Maude Hattabaugh.

The extent of the attorney's opportunity for observing and knowing the mental condition of Mr. Carter is that Mr. Carter and his wife came to his office in the spring of 1946 to see about getting him to prepare a deed, and on the afternoon of the 8th of August a Mrs. Toothman came to his office to tell him that Mr. and Mrs. Carter wanted him to come to their home to prepare a deed; that he went to the home and talked with them, returned to his office and prepared the deed and came back to the Carter home where the deed was executed; that in his opinion Mr. Carter knew what he was doing and was fully capable of understanding the nature and effect of his act. The two witnesses to the execution of the deed were neighbors of the Carters, one of them living directly across the street and the other a few doors distant. Aside from occasional meetings in passing they had no other or different opportunities for observing Mr. Carter and his physical and mental condition than any other neighbor living near would have and their testimony as to his mental capacity is based upon these occasional conversations and on what they saw and heard at the time of the execution of the instrument. All agree that at the time of the execution of the instrument Mr. Carter was in bed ill, that his signature was written by the attorney who prepared the deed and that his hand while holding the pen was directed and moved by the attorney in making his mark. Jacob D. Carter could neither read nor write.

There is considerable testimony in the record tending to show that for some time prior to August 8, 1946, Lena Carter had been endeavoring to get Mr. Carter to make her at least a joint owner of the property here involved and that in her efforts to induce him to execute such conveyance she had enlisted the aid of some two or three persons in whom Mr. Carter was presumed to have confidence, but none of this testimony is conclusive, as to any success which she had in such efforts, if she in fact made them. All of this testimony was immaterial insofar as it had any bearing upon the crucial question in the case, to wit: Mr. Carter's mental capacity at the time of the execution of the purported deed.

The trial court had all of these witnesses before it and could better determine the weight and value of their testimony than can this court by a mere reading of the record. The court found that the allegations of plaintiff's petition had been established by the evidence and we are unable to say that the judgment of the court is clearly against the weight thereof.

Judgment affirmed.